HEATH EDUCATION ASSOCIATION *v.* BELL ET AL.

(Nos. 83-CVF-2017 to -2023 and 85-CVF-0248—Decided October 28, 1985.)

Licking County Municipal Court.

*Frederick G. Cloppert, Jr.,* for plaintiff.

*A. Terrence Treneff,* for defendants.

FROST, J. All eight cases were commenced by the filing of complaints in the Small Claims Division of the Licking County Municipal Court by the Heath Education Association (hereinafter referred to as "Association") which is the exclusive bargaining representative of the teachers of the Heath, Ohio school district. The defendants are all teachers who have refused to become dues paying members of the Association and have refused to pay, pursuant to the Master Agreement, a monthly agency fee of seventy-five percent of the monthly membership dues.

The Master Agreement entered into between the Heath Board of Education (hereinafter referred to as "board") and the Association required all non-member teachers to pay this agency fee in recognition of the fact that the Association performs certain collective bargaining services on behalf of all teachers regardless of whether they are members of the Association. Paragraph (J)(1), Article III, of the Master Agreement sets forth the non-membership agency fee requirements. That paragraph states:

"In recognition of the Association's services to the bargaining unit, all members of the bargaining unit shall either be members of the Association or share in the financial support of the Association by paying to the Association a service fee equivalent to seventy-five percent (75%) of dues uniformly required of members of the Association."

Paragraph (J)(3), Article III, further expresses the liability of the non-member teachers who fail to satisfy the agency fee requirements:

"Should the bargaining unit member fail to pay the fee or to join the Association, then the bargaining unit member shall be liable to the Association in a civil action for damages for said service fee. The Association shall hold harmless the Board of any action brought against the Board as a result of the provisions of this Article."

In addition to the twenty-five percent deduction from the annual dues afforded to a non-member teacher, a refund scheme is found in the Administrative Procedure of the Ohio Education Association. Any dissenting agency fee payers may utilize this procedure if that non-member teacher feels that a portion of the agency fee is being utilized for non-collective bargaining services such as a partisan political cause. The refund procedure as set forth in the first paragraph of the Administrative Procedure reads as follows:

"The Refund Procedure will operate as follows. During the 1982-83 membership year, the Ohio Education Association (hereinafter 'OEA') will place in an escrow account 100% of any agency shop fees received from dissenting fee payers. After the end of the membership year, an impartial umpire will determine the percentage of the total 1982-83 OEA expenditures that is in support of partisan political or ideological causes not germane to the work of the employee organization in the realm of collective bargaining. This percentage will provide the basis for allocating the money in the escrow account between the dissenting fee payers and the associations. The same procedure will be followed in subsequent membership years, except that the amount placed in the escrow account will be based upon the percentage determined by the umpire for the preceding membership year, plus a 5%-of-dues 'cushion' to minimize even further the possibility that the agency shop fees of dissenting fee payers will be used for impermissible purposes."

The "umpire" as referred to in this refund procedure is to be chosen by the Ohio Education Association from the National Academy of Arbitrators and will determine the total expenditures for the membership year which was spent for partisan political or ideological causes not germane to the services of the organization in the realm of collective bargaining. Until a dissent is filed by a non-member teacher and until a decision is made by the appointed umpire, the agency fee is held in an interest-bearing escrow account on a membership year basis.

The Association, plaintiff herein, has filed a motion for summary judgment pursuant to Civ. R. 56 claiming that there is no genuine issue as to any material fact and that judgment should be entered for the amount prayed in the complaint which represents the agency fee for each of the non-member teachers. It is important to note that none of the eight defendants has paid the agency fee and thereafter taken advantage of the refund procedure.

The defendants' position is that there has been no showing of the amount spent by the Association for collective bargaining versus non-collective bargaining issues and therefore the amount due and owing is, indeed, in issue.

That the Master Agreement which provides for the agency fee and which was executed between the board and the

Association is binding on all teachers of the Heath, Ohio school district whether they are members of the Association or not is unquestionable. It is well-recognized that an exclusive bargaining unit can negotiate and bind all employees regardless of whether all of those employees are members of the negotiating unit or not. In fact, the board, in its collective bargaining agreement stated that:

"The Board shall recognize the Association as the exclusive negotiating agent for all teachers employed by the district."

Since all teachers, Association members and non-Association members are bound by the Master Agreement, the issue to be resolved is the validity of the requirement for non-members to pay a seventy-five percent agency fee. The concept of a non-member paying an agency fee was definitively addressed by the United States Supreme Court in *Abood* v. *Detroit Board of Edn.* (1977), 431 U.S. 209. The *Abood* decision held that it was constitutional for a governmental agency to condition employment on the payment of an agency fee insofar as those fees are utilized for collective bargaining, contract negotiations, and grievance procedures.

The United States Supreme Court recently affirmed its holding in the *Abood* case but further set restrictions with regard to due process as it concerns the disposition of the agency fee or "fair share." In the case of *Ellis* v. *Brotherhood of Railway, Airline & Steamship Clerks* (1984), ___ U.S. ___, 80 L. Ed. 2d 428, the high court stated that a non-member's fair share may be extracted from that employee but any rebate procedure must ensure that monies collected from dissenting non-members are not to be used for impermissible activities before refunding any portion of the agency fee collected. The court suggested certain acceptable alternatives when it stated:

"But there are readily available alternatives, such as advance reduction of dues and/or interest-bearing escrow accounts, that place only the slightest additional burden, if any, on the union. Given the existence of acceptable alternatives, the union cannot be allowed to commit dissenters' funds to improper uses even temporarily." *Id.* at 439.

The *Ellis* case involved a union whose contract required a non-member employee to pay, in advance, the full amount of union dues but thereafter utilized a rebate procedure to refund a portion of those dues which was not utilized for collective bargaining services. In apparent recognition of both the *Abood* and *Ellis* decisions, the Association, in the case at bar, required only seventy-five percent of the dues and implemented a refund procedure from an interest-bearing escrow account. It would therefore appear and this court finds that the procedure utilized herein by the Association complies with the requirements of the United States Supreme Court as envisioned in its decisions in *Abood* and *Ellis*.

The defendants argue that their First Amendment right of freedom of association is violated by the requirement of supporting an association with whose principles they may disagree. Although the United States Supreme Court apparently found a minimal First Amendment interference, the court in *Ellis* also found that the minimal interference must give way to the paramount objective of industrial peace and harmony. The *Ellis* court stated at 446-447:

" 'To be required to help finance the union as a collective bargaining agent might well be thought * * * to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit.' * * * [*Abood, supra*] at 222. It has long been settled that such interference with First Amendment rights

is justified by the governmental interest in industrial peace. * * * At a minimum, the union may constitutionally 'expend uniform exactions under the union-shop agreement in support of activities germane to collective bargaining.' *Railway Clerks* v. *Allen* [1963], 373 U.S., at 122. * * *"

Finally, the defendants argue that the requirement to pay the agency fees first and thereafter pursue the rebate procedure requires the non-member employee to utilize an Association-controlled internal grievance procedure which is inherently biased. There is no support for this position. This court cites with approval the decision written by Judge (now Justice) Douglas in the decision of *Toledo Federation of Teachers* v. *Gibney* (Feb. 3, 1984), Lucas County App. No. L-83-303, unreported, wherein it was stated:

"Where a refund procedure by which a non-member may protest the use of any portion of his service fee for political activities is provided, such procedural remedy must be exhausted prior to the assertion of any claim regarding such expenditures in a judicial proceeding." *Id.* at paragraph three of the syllabus.

To require the Association to verify the expenditures related to collective bargaining matters as opposed to non-collective bargaining matters before the non-members pay the agency fee places the "cart before the horse." The Master Agreement which is binding on the defendants herein requires a payment first and then utilization of the refund procedure. Regardless of one's personal philosophy concerning employer-employee relationships and union organizations versus open shops, the contract in this case must be followed.

Further, legislative support for the proposition that a non-member must exhaust the internal union remedies first is found in R.C. Chapter 4117. The Ohio Collective Bargaining Law as codified in R.C. Chapter 4117 specifically recognizes an internal rebate procedure for "fair share" or agency fees in the public sector in R.C. 4117.09(C). Although not controlling on the case at bar since the obligations of the parties in this matter arose before the passage of that law, a clear legislative intent to approve this procedure can be seen.

For the foregoing reasons the court grants the motion for summary judgment filed herein by the plaintiff and awards judgment in favor of the plaintiff and against each of the defendants in the amount of $175 plus interest at the rate of ten percent per annum from the date of the filing of this entry plus the court costs herein in case Nos. 83-CVF-2017, 83-CVF-2018, 83-CVF-2019, 83-CVF-2020, 83-CVF-2021, 83-CVF-2022 and 83-CVF-2023. The court also awards judgment in favor of the plaintiff and against the defendants in the amount of $184 plus interest at the rate of ten percent per annum from the date of the filing of this entry plus the court costs herein in case No. 85-CVF-0248. No attorney fees are awarded.

*Motion granted.*